UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MERANZA CARDENAS, | No.  2:24-cv-02708-SCR |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 401-34; § 1381-1383f.  For the reasons that follow, the Court will DENY Plaintiff's motion for summary judgment and GRANT the Commissioner's cross-motion for summary judgment.

## I.  PROCEDURAL BACKGROUND

Plaintiff first applied for DIB and SSI benefits in 2004.  Administrative Record ("AR") 107.[1]  Plaintiff alleged disability beginning in April 2000.  *Id*.  In that earlier application, the administrative law judge ("ALJ") concluded that Plaintiff had no severe impairments and was not under a disability through the date of that decision, which was May 26, 2006.  AR 109-112.

---

[1]  The AR is electronically filed at ECF No. 9.  When referencing the AR, page references are to the number in the lower right corner of the page, not the CM/ECF generated header.  References to briefs are to the page number generated on the CM/ECF header.

Plaintiff appealed to the District Court, and the Court remanded, finding that the ALJ had erred at Step Two in finding no severe impairments. *See Cardenas v. Astrue*, 2008 WL 707372 (E.D. Cal. Mar. 14, 2008). On remand, Plaintiff was found to be not disabled thru the date of January 11, 2010. AR 118-126. In that ALJ decision, Plaintiff was found to have four severe physical impairments. AR 120. It appears that Plaintiff did not appeal that decision to the District Court.

The applications at issue here for DIB and SSI were made in 2020. AR 422-438. Plaintiff again alleges disability beginning on April 15, 2000. AR 422. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an ALJ. Three hearings were held. At the first, on January 12, 2022, the ALJ postponed the hearing to allow further development of the record, particularly in regard to recent gastrointestinal issues and treatment. AR 102-03. At the second hearing on July 21, 2022, Plaintiff testified, and the hearing was continued because a medical examiner was not available. AR 90. The ALJ asked Plaintiff's counsel what kind of medical expert Plaintiff would prefer. AR 91. Plaintiff's counsel stated that an internist or orthopedist would be appropriate. AR 91. The third and final hearing occurred on June 20, 2023, at which Plaintiff again testified, as did vocational expert (VE) Lizet Campos. AR 49 to 63.

On August 15, 2023, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of the Act. AR 25-40 (decision). On May 15, 2024, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 9-14 (decision).

Plaintiff filed this appeal of the Commissioner's decision on October 1, 2024. ECF No. 1. The parties filed cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner. ECF Nos. 14 & 17. Plaintiff did not file an optional reply brief.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1971, and was 49 years old when he filed the instant applications. AR 422, 429. At the time of the hearing in July 2022, Plaintiff was 50 years old, and he testified he had not worked in the previous 15 years due to chronic pain. AR 73. Plaintiff stated that he was injured at work in 2000, and had received worker's compensation benefits. AR 75. The

work injury was to his lower back.  AR 75.

Plaintiff testified he left school in ninth grade and obtained a GED.  AR 73.  After his workplace injury, he attended some vocational rehabilitation and got certified for Microsoft Office.  AR 75.  However, he did not pursue a career using those skills because he cannot sit for a long period of time.  AR 75.  Plaintiff testified that his back pain worsened over the years.  AR 76-77.  From 2000 to 2005, he saw a chiropractor, but then he moved and didn't "find a new doctor for [his] pain until 2007."  AR 77.  He testified to taking pain medications and injections.  AR 77.  Surgery was suggested, but "from the stories" Plaintiff had heard, he did not think it would be effective and declined surgery.  AR 77.

Plaintiff testified that laying down helped to relieve his pain, and that he needs to lie down about four times a day.  AR 78-79.  He testified that he was undergoing pain management treatment, with medication and injections.  AR 79.  Injections on his right side had helped with mobility and strength in that arm.  AR 80.  Plaintiff stated he took hydrocodone for pain from 2007 to 2015, but then when his doctor retired, he stopped taking it until 2018.  AR 81.  Plaintiff testified he does not have any side effects from the medications he takes.  AR 60.

In 2016, Plaintiff experienced numbness in his right leg, and states that he walks with a limp.  AR 83-84.  He testified he does not use an assistive device such as a cane or walker.  AR 84.  Plaintiff also testified as to gastrointestinal issues in 2017, which required surgery.  AR 81-82.  Since then, Plaintiff has some bowel incontinence, and needs to be close to a restroom.  AR 88.

As to activities of daily living, Plaintiff testified to some difficulties with self-care.  AR 85.  For cooking, he mainly microwaves, and states he does not help with cleaning.  AR 86.  He testified he washes his own laundry by hand.  AR 54-55.  Plaintiff is able to drive, and he often occupies his time during the day on the computer and TV.  AR 56.

### III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

3

Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Social Security benefits are available for eligible individuals who are "disabled." 42 U.S.C. § 1381a.  An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

*Id*., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make her capable of performing her past work?  If so, the claimant is not disabled.  If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

1. [Step 1] The claimant has not engaged in substantial gainful activity ("SGA") since April 15, 2000, the alleged onset date (AR 28).

2. [Step 2] The claimant has the following severe impairments: degenerative disc disease (DDD) of the cervical and lumbar spine, obesity, disc bulges in thoracic spine and right shoulder tendonitis (AR 28).

3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (AR 23).

4. [Preparation for Step 4] After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(a) and 416.967(b) except stand, walk or sit 6 hours each out of an 8-hour workday; frequently climb ramps or stairs and occasionally climb ladders, ropes or scaffolds; frequently stoop, kneel, crouch; occasional overhead reaching; no concentrated exposure to unprotected heights or the operation of dangerous moving machinery, frequent fine and gross manipulation and frequent foot controls. (AR 32).

5. [Step 4] The claimant has no past relevant work (AR 38).

6. [Step 5] The claimant was born in 1971 and was 28 years old, which is defined as a "younger individual" on the alleged onset date (20 CFR §§ 404.1563), but subsequently changed age category to closely approaching advanced age (AR 38).

7. [Step 5, continued] The claimant has a high school education (AR 38).

8. [Step 5, continued] Transferability of job skills is not at issue because claimant does not have past relevant work (AR 38).

9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (AR 38).

10. The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2000, through the date of the ALJ's decision. (AR 31).

## VI. ANALYSIS

Plaintiff's opening brief presents three alleged points of error for review: 1) the ALJ failed to provide clear and convincing reasons for rejecting subjective symptom testimony; 2) the ALJ erred by failing to properly evaluate the April 2011 opinion of Dr. Powell; and 3) the ALJ failed to adequately develop the record as to mental limitations. ECF No. 14 at 6. Plaintiff asks that the matter be remanded for further proceedings. *Id.* at 28. Defendant argues the ALJ's decision is supported by substantial evidence and asks that the Court affirm the ALJ's decision. ECF No. 17.

### 1. **Plaintiff's Subjective Symptom Testimony**

Plaintiff appears to argue that although the ALJ found that Plaintiff's complaints of pain from his physical impairments was not consistent with the objective evidence, the ALJ should have considered whether there was a "multifactorial aspect" or "somatic aspect" to Plaintiff's pain. ECF No. 14 at 22. Plaintiff also contends the ALJ did not consider whether there was a "mental component" to Plaintiff's pain. *Id*. In this respect, this argument somewhat overlaps with Plaintiff's contention (discussed below) that the ALJ did not adequately develop the record.

Defendant argues that the ALJ properly discounted Plaintiff's testimony as it was found to not be consistent with the objective medical evidence and because the symptoms improved with treatment. ECF No. 17 at 6-7. Further, Defendant contends that Plaintiff's argument is that the ALJ should have considered something more (the somatic aspects of Plaintiff's impairments), but that Plaintiff "otherwise did not contest the multiple valid reasons" the ALJ gave for discounting the testimony. *Id*. at 5.

The ALJ discounted Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his impairments. AR 32-35. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process: First the ALJ must "determine whether the claimant has

presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  *Id.*  (internal citations omitted).

Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." *Id.* at 1014-15 (internal citations omitted).  While an ALJ's credibility finding must be properly supported and sufficiently specific "an ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (internal citation and quotation omitted).  In weighing a claimant's credibility, an ALJ may consider, among other things, inconsistencies either in the claimant's testimony or between his testimony and his conduct, claimant's daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Id.* at 959.

The ALJ summarized Plaintiff's testimony concerning his allegations of disabling pain and found that his statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence of record. AR 32-33.  The ALJ noted that Plaintiff suffered his back injury in 2000, and that in April 2006, treating chiropractor Peter Huber noted that Plaintiff had experienced "effective results with chiropractic care and therapy."  AR 33 citing AR 756.  The ALJ observed that at home stretching exercises and icing procedures "seemed to be working favorable for him to reduce increased symptomatology."  AR 33.  The ALJ observed that at a September 2019 exam Plaintiff "was able

8

to function well and do all his activities of daily living without much pain." AR 34 citing AR 981.

The ALJ also considered that Plaintiff had been reducing his pain medication since 2020. AR 34. That clinical note stated Plaintiff had reduced from 120/month to 70 and that pain was well controlled at 90 – "Per chart review, planned to taper off completely since he deferred further procedures." AR 1314. The ALJ discussed a January 2021 treatment note at which the doctor found Plaintiff's pain was not explained by the objective evidence and the doctor did not recommend surgery: "I definitely do not recommend any spine surgery. His images relatively benign." AR 34. The doctor suggested treatment options such as cardio behavioral therapy and physical therapy. AR 34. A July 2019 assessment suggested an epidural to decrease inflammation to "allow the claimant to work harder in rehabilitation and return to work sooner." AR 34-35, citing AR 988. Cervical imaging from October 2020 did not demonstrate nerve root impingement. AR 35, citing AR 2574.

The ALJ noted that Plaintiff had a doctor's visit in March 2022, and "told his examining doctor the [sic] his attorney recommended to have an in-person appointment." AR 35. Plaintiff discussed a prior abdominal surgery and "reported no pain and no desire for repair." AR 35, citing AR 2423. The ALJ concluded her analysis of the subjective symptom testimony with the following:

> The claimant's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the record. As for the claimant's back and upper extremity impairments, the right shoulder demonstrated only mild discomfort with cross body distress and overhead activity during an orthopedic examination. The examining doctor noted that the claimant's multiple musculoskeletal complaints were multifactorial complex. The doctor could not explain all the claimant's pain based on the imaging. There was no true stenosis of the cord or cauda that would relate to the arms or leg discomfort that he alleges. The right shoulder MRI did demonstrate some tendinopathy of the right supraspinatus and some AC joint edema however the claimant has not undergone therapy, injection, or any conditioning. Finally, there was no recommendation for any spine surgery as the images were relatively benign. Other treatment options include cardio behavioral therapy, physical therapy, multimodal pain management should be sought.

AR 35. Thus, the ALJ considered the objective medical evidence and Plaintiff's treatment, and

9

found his testimony inconsistent with the record.

An ALJ must consider the objective medical evidence along with other evidence when evaluating the reliability of symptom testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original). In *Smartt*, the ALJ discounted the claimant's symptom testimony because: 1) the objective medical evidence was inconsistent with reported limitations; 2) the claimant acknowledged that she routinely performed several daily activities; and 3) generally her treatment had been conservative. 53 F.4th at 497. The Ninth Circuit found the ALJ's decision was supported and stated: "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id*. at 499 (citation and quotation omitted). The Ninth Circuit also agreed with the ALJ's assessment of Smartt's conservative treatment and stated: "Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Id*. at 500 (citation and quotation omitted).

The ALJ discussed Plaintiff's chiropractic care, home stretching exercises, and medication treatment. A claimant's treatment history is a valid consideration in evaluating subjective symptom testimony. *See* 20 C.F.R. § 404.1529(c)(3). Some of Plaintiff's treatment was conservative. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (characterizing the use of physical therapy, anti-inflammatory medication, and transcutaneous electrical nerve stimulation as "conservative treatment"). Plaintiff also testified to taking prescription pain medication and receiving injections. In considering whether prescription pain medication and injections are "conservative," courts have "reached varying conclusions based on the longitudinal records of each particular case." *See Keener v. Comm'r of Soc. Sec.*, No. 1:22-cv-1061 SAB, 2023 WL 4424671, * 14 (E.D. Cal. July 10, 2023) (collecting cases). The ALJ also considered Plaintiff's usage of pain medication and that he had been decreasing the amount of medication. The "type, dosage, [and] effectiveness" of medication taken to alleviate a claimant's pain or other symptoms is a proper consideration when elevating their subjective symptom testimony. 20

C.F.R. § 404.1529(c)(3)(iv). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citations omitted); *see also Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits").

The medical record is lengthy in this case, and the Court acknowledges that there is both evidence of improvement with treatment, and evidence suggesting Plaintiff's pain may not be so well controlled. There are records which support the ALJ's conclusion. *See for example* AR 1853 ("pain much improved"); AR 1849 ("pain is well controlled"); AR 1446 ("pain has been improved with current medication regimen"). There is evidence that Plaintiff's pain medication was being reduced. A September 2020 office note reads that "patient agrees" with a reduction from 90 to 70 Norco, and the plan is "to taper off norco." AR 1254. Sometimes even the very same record suggests both positions – for example, in August 2020, Plaintiff writes that he had experienced 50% improvement since starting chiropractic care and that he is no longer "waking up with daily pain." AR 648. But Plaintiff also writes that he has "lower back soreness off and on and disabling." AR 648. However, this somewhat inconsistent record does not provide a basis to grant Plaintiff relief. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ appropriately considered the objective medical evidence and Plaintiff's treatment and effectiveness of treatment in discounting Plaintiff's subjective symptom testimony.

## 2. The 2011 Medical Evaluation by Dr. Powell

Dr. Powell completed a "medical source statement" two-page form in April 2011. AR 2393-94. Powell assessed that Plaintiff could stand and/or walk for less than 2 hours in an 8 hour workday, and could sit for less than 6 hours. AR 2393. He indicated Plaintiff would need "frequent position changes" due to his low back pain. AR 2393. Plaintiff contends the ALJ failed to engage in any meaningful supportability or consistency evaluation of Dr. Powell's opinion. AR 14 at 25. Plaintiff contends that rejecting Dr. Powell's opinion was harmful error

11

because if the ALJ had accepted Dr. Powell's assessed limitations of Plaintiff, then a finding of disability would have been required. *Id*. at 26. Defendant argues that the ALJ adequately assessed the supportability and consistency of Powell's opinion. ECF No. 17 at 9-11. In part, Defendant states the analysis was sufficient because the ALJ described in greater detail his rejection of other doctors limiting Plaintiff to 30 minutes of sitting at a time. *Id*. at 11 ("Thus, the assessment of Dr. Eiler's and Dr. Foutaine's opined limitations and the objective medical evidence findings and treatment evidence cited in support of the ALJ's findings *also* provide additional support for the ALJ's assessment of Dr. Powell's opined limitations.")

With respect to medical opinions, regulations enacted in 2017 provide that the ALJ will no longer "give any specific evidentiary weight ... to any medical opinion(s)" but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2).

The Ninth Circuit has confirmed that this regulatory framework eliminates the "treating

physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id*. at 792. In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

The ALJ stated of Dr. Powell's opinion: "I do not find the opinion of D. Powell, MD dated April 2011 persuasive." AR 37. The ALJ then summarized Dr. Powell's opinion and stated: "The extreme limitations are not consistent with or supportable by the medical record. Moreover, Dr. Powell gives no indication when the limitations began or the length of treatment." AR 37.

The ALJ is correct that the medical source statement does not state when limitations began or length of treatment. There are very few medical records in the administrative record from Dr. Powell. It appears that he saw Plaintiff primarily in the 2007 to 2010 time period, during which Plaintiff brought his prior disability application and was determined not to be disabled. *See for example* AR 2387-92. Plaintiff's testimony was he began seeing Dr. Powell in 2007. AR 77. In the limited medical records from Dr. Powell, is a radiology diagnostic test of Plaintiff's shoulder which revealed "no radiographic evidence of acute osseous pathology." AR 2391. During the prior application, the ALJ considered a 2008 opinion from Dr. Powell and found: "The conclusions are not supported by reference to any medical evidence, and are inconsistent with other medical evidence and treatment records from the same doctor and health care facility." AR 123. Plaintiff was found not to be disabled through the time period of January 11, 2010 (AR 118-126) and did not further challenge that decision.[2]

_____

[2] The ALJ explained at the first hearing that there were two periods of time at issue. Plaintiff had a Title II claim for the 2000 to 2005 period, and a Title XVI claim based on protected filing date of July 2020. AR 99. The ALJ explained that the earlier period was open for reconsideration due (continued…)

The ALJ's assessment of Dr. Powell's opinion is supported.  Dr. Powell's medical source statement, when asked to "cite supporting medical findings" for the lifting and stand/walk limitations merely states "low back pain."  AR 2393.  Instead of providing an explanation of medical findings, Dr. Powell has listed only Plaintiff's subjective report of back pain.  When considering supportability, it is appropriate for the ALJ to consider "supporting explanations presented by the medical source."  20 C.F.R. § 404.1520c(c)(1).  The ALJ had also discussed the objective medical evidence (as discussed *supra*), and found Dr. Powell's opinion not consistent with the medical record.

### 3.  **ALJ's Duty to Develop the Record**

Plaintiff argues that the ALJ did not carry out her duty to develop the record because she did not order a mental consultative examination.  ECF No. 14 at 27.  Defendant argues the ALJ did not have a duty to further develop the record because Plaintiff did not provide significant evidence or allegations of somatic symptom disorder.  ECF No. 17 at 12.  Defendant argues the record is not ambiguous and that it contained over 1,500 pages of medical records and was adequate to evaluate Plaintiff's claims.  *Id.*  Defendant argues that the ALJ did take adequate steps to develop the record, and that Plaintiff's counsel failed to suggest that a mental consultative exam was required.  *Id.* at 13.

In social security cases, the ALJ "has an independent duty to fully and fairly develop the record to assure that the claimant's interests are considered."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  This duty exists in cases where the claimant is represented, and when the claimant is unrepresented "the ALJ must be especially diligent in exploring for all the relevant facts."  *Id.*  "The ALJ's duty to develop the record fully is also heightened where the claimant

---

to a change in the musculoskeletal listing.  AR 99.  The ALJ's decision also noted that the presumption of continuing non-disability did not apply due to an increase in severity of impairments and that Plaintiff had changed age categories.  AR 25.  However, the ALJ also found that one impairment found severe in 2010 was no longer severe.  AR 26.  There is no current argument concerning these Step 2 findings, or that Plaintiff met the Listings at Step 3 of the sequential evaluation.  As Plaintiff's date last insured for Title II benefits was in 2005, and the Title XVI application was not made until 2020, a medical opinion from 2011 does not fall within either time period and is of lesser relevance.

may be mentally ill and thus unable to protect her own interests." *Id*., citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir.1992). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* (internal quotation and citation omitted).

Here, Plaintiff points to only one or two pages from the medical record in support of the argument that a mental consultative exam was required. ECF No. 14 at 27-28. Primarily Plaintiff relies on the note of Dr. Tabaraee at the spine surgery clinic on January 21, 2021. AR 1423-24. Dr. Tabaraee wrote: "I cannot explain all of his pain based on the images." AR 1424. He stated that Plaintiff "does not have true stenosis of the cord or cauda that would relate to the arms or leg discomfort." AR 1424. He stated: "I definitely do not recommend any spine surgery." AR 1424. Thus, Dr. Tabaraee found he could not recommend surgery because Plaintiff's alleged pain was not supported by the objective evidence. Plaintiff focuses on this statement: "Chronic refactory pain is multifactorial with significant mental health component." AR 1424. Plaintiff alleges that this comment should have led the ALJ to develop the record concerning mental health. Plaintiff also points to AR 969, saying that he scored an 11 on depressive screening indicating moderate depression. ECF No. 14 at 28.

The ALJ did not find that Plaintiff had any severe mental impairments. AR 28-29. The ALJ stated: "The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." AR 29. Plaintiff does not challenge this Step 2 finding.

It is ultimately the Plaintiff's burden to establish disability. *Mayes v. Massanari*, 267 F.3d 453, 459 (9th Cir. 2001) citing 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."). Plaintiff has an obligation to bring forth evidence to support his claim. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled. You must inform us or submit all evidence known to you that relates to whether or not you are blind or disabled."). Here, the ALJ adequately developed the record and Plaintiff's counsel affirmatively represented the record was complete.

15

The ALJ held three hearings.  At the first on January 12, 2022, the ALJ postponed the hearing to allow further development of the record, particularly in regard to recent gastrointestinal issues and treatment.  AR 102-03.  At the second hearing on July 21, 2022, Plaintiff testified, and the hearing was continued because a medical examiner was not available.  AR 90.  The ALJ specifically inquired of Plaintiff's counsel as to what further medical consultation should occur and Plaintiff's counsel stated that an internist or orthopedist would be appropriate.  AR 91.  The third and final hearing occurred on June 20, 2023, at which Plaintiff's again testified.  AR 49-63.  At that hearing Plaintiff's counsel stated that he understood the record to be complete.  AR 52.

The Court could fairly find this issue waived.  *See Johnson v. Saul*, No. 19-cv-1647-JLT, 2021 WL 754197, *3 (E.D. Cal. Feb. 26, 2021) ("Importantly, courts have determined that when counsel represents a claimant at the hearing and indicates the record is 'complete,' the claimant waived any challenge that the ALJ erred by not developing the record.") (collecting cases).  "It would appear inequitable to allow counsel to affirm that the record is complete before the ALJ, and then after receiving an unfavorable decision, argue error due to the failure to further develop the record." *Marin v. Comm'r of Soc. Sec.*, No. 1:24-cv-00055-SAB, 2024 WL 3845357, at *9 n.8 (E.D. Cal. Aug. 16, 2024).

Here, Plaintiff not only represented that the record was complete, but was also offered the ability to suggest a further expert medical consultant, and suggested an internist or orthopedist, but did not suggest a mental consultative examination.  The Court finds the issue waived.  Even if not waived, the Court does not find the ALJ failed in her duty to develop the record.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for the proper evaluation of the evidence.").

### VII.  CONCLUSION

A plaintiff has the burden to prove disability.  *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish entitlement to disability insurance benefits.") (cleaned up).  The ALJ found that Plaintiff did not meet his burden, and that

16

decision will be upheld if it is supported by substantial evidence. *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). This evidentiary threshold "is not high … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 103. The Court finds the ALJ's decision meets the substantial evidence standard.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is GRANTED.

3. The Clerk shall enter Judgment for Defendant and close this case.

SO ORDERED.

DATED: June 10, 2026.

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

17